# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**PHILIP DENNIS KEITH**,

Debtor.

Case No.  **10-61722-7**

# MEMORANDUM of DECISION

At Butte in said District this 7th day of January, 2014.

In this Chapter 7 bankruptcy, after due notice, a hearing was held December 10, 2013, in Billings on the Chapter 7 Trustee's Motion for Turnover of Property of the Estate filed November 6, 2013, at docket entry no. 767, together with Debtor Philip Keith's ("Keith") objection thereto.  In conjunction with the above, a hearing was also held in related Adversary Proceeding No. 12-00054 on the Chapter 7 Trustee's Motion for Entry of Default Judgment filed September 11, 2013, at docket entry no. 8.  The Chapter 7 Trustee, Joseph V. Womack ("Womack") of Billings, Montana appeared at the hearing with his counsel, Eli J. Patten of Billings, Montana.  Keith appeared at the hearing *pro se*.  Womack, Keith's daughter Heather Keith ("Heather"), Gerrick Phillips, and Julie Heinrich testified.  Womack's demonstrative exhibits, along with Exhibits 2 through 8, and 10 were admitted into evidence, as were Keith's Exhibits H, I and AA.[1]  At the conclusion of the hearing, the Court took the matters under

---

[1]  Keith filed a "Supplemental Exhibit List" on December 10, 2013, but did not include copies of the exhibits with his list.  The Court directed Keith at the hearing to provide the Court

1

advisement.  The matters are ready for decision.  For the reasons discussed below, the Court

grants Womack's Motion for Turnover of Property and Motion for Entry of Default Judgment.

## BACKGROUND

Through attorney Allen Beck ("Beck"), Keith commenced this case on July 16, 2010, by

filing a voluntary Chapter 11 bankruptcy petition.  Keith's petition was not accompanied by

schedules or a statement of financial affairs.   Instead, upon Keith's request, he was granted an

extension of time until August 6, 2010, to file his schedules and statement of financial affairs.

Keith tardily filed his schedules and statement of financial affairs on August 11, 2010.

Keith also caused five corporations to file Chapter 11 bankruptcy petitions:  *In re Turn of

the Century, Inc.*, Case No. 10-61662; *In re PS, Inc.*, Case No. 10-61663; *In re Jackpot on Main,

Inc.*, Case No. 10-61664; *In re Bailey's Pub, Inc.*, Case No. 10-61884; and *In re Blackhawk, Inc.*,

Case No. 10-61886.  For reasons set forth in a Memorandum of Decision entered September 29,

2010, at docket entry no. 50, this case was converted to Chapter 7 of the Bankruptcy Code.  The

findings in the September 29, 2010, Memorandum of Decision are incorporated herein by

reference.  Thereafter, the corporations' bankruptcy cases were also converted to Chapter 7 of the

Bankruptcy Code.  Womack was appointed the Chapter 7 Trustee in this case on September 21,

2010.[2]  Womack was also appointed as Chapter 7 Trustee in the cases of *In re Jackpot on Main,

Inc.* and *In re Bailey's Pub, Inc*.

After the conversion of this case to Chapter 7, the United States Trustee filed a motion for

with copies of his exhibits.  Keith filed on December 13, 2013, copies of Exhibits identified as
AA, I and J.

[2]  The Court converted this case to Chapter 7 at a hearing held September 20, 2010.  The
Court's ruling was not memorialized until September 29, 2010.

examination and disgorgement, asserting Beck was not entitled to the $91,666 retainer he received from Keith, Turn of the Century, Inc., PS, Inc., Jackpot on Main, Inc., Bailey's Pub, Inc., and Blackhawk, Inc.[3]  In response to said motion, the United States Trustee and Beck entered into a stipulation, which was filed with the Court on October 29, 2010, wherein Beck agreed to return the $55,000 retainer paid by Keith, Turn of the Century, Inc., PS, Inc., Jackpot on Main, Inc., Bailey's Pub, Inc., and Blackhawk, Inc.[4]  Thereafter, on January 14, 2011, Keith filed a pleading at docket entry no. 222.  Attached to said pleading was a letter from Keith to Neil Jensen of the United States Trustee's office, wherein Keith wrote: "Philip Keith issueda [sic] certified letter to Mr. Beck requested the return of the $55,000.00 retainer.  It was later discovered that Mr. Beck embezzled $30,000.00 paid to him from the company Playa Tech that held funds for Kacy Laingen.  The money was not a loan to TOC Inc or to Philip Keith.  Kacy Laingen has a note between her and Playa Tech that is secured by equipment.  The $25,000.00 that Joe Womack apparently received is part of the Playa Tech money."

While Playa Tech has not sought protection under the Bankruptcy Code, Kacy Laingen ("Kacy"), Keith's then girlfriend and now wife, filed a proof of claim in Keith's bankruptcy case on December 28, 2010, asserting a secured claim in the amount of $79,997.00.  Attached to the proof of claim is an undated Promissory Note wherein Keith agreed to repay Kacy the sum of "$79.997 [sic] together with interest rate of 10%[.]"  The Promissory Note was allegedly secured by a Mortgage dated December 14, 2010, but not recorded, on a condominium located in

---

[3]  In *In re Turn of the Century, Inc.*, Case No. 10-61662, Beck indicated that the $91,666 was a typographical error and that he received a total of $55,000 for his legal services.

[4]  Womack later entered into a stipulation to divide the $55,000 retainer equally between Keith's bankruptcy estate and the corporate bankruptcy estates.

Scottsdale, Arizona.  Keith and Kacy later stipulated with Womack that "the Mortgage on the Property is void and of no force or effect and does not attach to the Property," and further agreed that Proof of Claim No. 21 was amended to provide that it was an unsecured claim, rather than a secured claim.

Keith did not list Kacy as a creditor in his original schedules, and has continually sought to lay blame for the inaccuracies in his schedules on Beck.  However, Keith filed amended schedules on June 13, 2011.  Once again, Keith did not did not list Kacy as a creditor, and similarly did not disclose that he was holding any money on behalf of Kacy.  The Court would also note that Keith did not list his personal residence located at 2039 Eastridge Drive, Billings, Montana in his original schedules.  Keith did, however, list his personal residence in his amended schedules.  Keith disclosed that his home had a current value of $390,000, and was subject to a secured claim in the amount of $122,000.

Womack testified that he became suspicious, shortly after his appointment, that Keith might be concealing assets.  After some investigation, Womack learned that Keith had transferred on or about October 2, 2008, his Wedge Wood condominium to his daughter, Michelle Skinner, and a condominium in Scottsdale, Arizona to his son, Michael Keith.  Neither the property nor the transfers of such were disclosed in Keith's original schedules.  Through adversary proceedings, Womack has recovered the foregoing property.  Womack also recovered for the benefit of the bankruptcy estate Heather's one-half interest in a condominium with an address of 24 Shadow Place[5], which was transferred on or about December 20, 2002, by

---

[5] Keith does not disclose any interest in the Shadow Place condominium in his schedules, other than to list a secured claim of $2,700 on his Schedule A for condominium fees associated with said condominium.

Blackhawk, Inc. to Heather and Debtor as joint tenants.  Womack also discovered that as of

Keith's petition date, a 2003 Hummer H2 was titled to Keith and Turn of the Century, Inc.  Keith

and his son, Michael Keith, maintained that Keith gifted the Hummer to Michael in 2004.  Keith

did not list the Hummer in his original schedules, but included the Hummer in his amended

schedules.  Womack eventually entered into an agreement with Michael whereby the Hummer

would be sold, with Keith's bankruptcy estate receiving seventy percent of the sales proceeds and

Michael receiving thirty percent of the sales proceeds.

    Notwithstanding the foregoing, Womack remained skeptical that he had recovered all

undisclosed assets.  Womack testified that part of his skepticism stemmed from Keith's

Schedules I and J, where Keith had reported monthly income of $16,600 and monthly expenses

of $4,486, which expenses did not include any type of mortgage payment or rent.  Womack

explained that after Keith's case was converted to Chapter 7, his casinos were shut down and

Keith's revenue stream dried up.  Keith complained to Womack that he was struggling to get by

and make his mortgage payment to Wells Fargo, all on social security income.  However, in

Womack's opinion, Keith was getting by, and making payments to Wells Fargo.  Womack was

also informed by Donald J. Willis and Gabriel R. Walls, who managed Keith's casinos for a

period of time, that Keith had taken significant amounts of cash from his casinos.

    Julie Heinrich worked for Keith as an employee of Turn of the Century, Inc. for

approximately six years.  Heinrich left her employment with Turn of the Century, Inc. about one

and one-half months after Willis and Walls took over the management of Keith's casinos.

Heinrich returned to work for Keith after Willis and Walls left.  Heinrich disputes the allegations

made by Willis and Walls that Keith was taking money from the casinos, explaining that the

gaming machines were metered by the State of Montana, making it very difficult to steal money from the gaming machines. Heinrich explained that the only place Keith could have taken cash was from the food and beverage sales, which Heinrich described as minimal.

Heinrich also explained that Keith's brother-in-law, Aquilino "Jack" Diaz ("Diaz"),[6] was the person in charge of collecting the books and money from the casinos on a daily basis. Diaz would count the cash, give the books to Heinrich and deposit the cash in the banks. Heinrich testified that she did not do any work for either Playa Tech or IQ Smart.

Despite his suspicions and concerns, Womack was unable to locate additional assets. That changed in September of 2012, when Womack received a message from Heather that she had some information for Womack. Before Womack could talk to Heather, he was contacted by Heather's attorney, George Radovich. Radovich told Womack that Keith had a safe deposit box and a bank account that Keith was using to conceal assets from the government. Womack proceeded to take Heather's sworn statement regarding the concealment of assets and in conjunction with that statement, Heather provided Womack with some bank statements from a bank account that Keith had maintained in Heather's name.

Heather obtained the bank account statements when she put a change of address notification into the post office, and then, because Heather's name was on the account, she started receiving the bank statements. Womack learned that the bank account was established in Heather Keith's name, doing business as IQ Smart, in early March of 2011. Heather testified that she has never used the account or deposited money into the account. However, Keith paid his personal bills from that account and deposited money therein. Womack's investigation revealed

---

[6] Diaz is the brother of Keith's late wife, Isabel Keith, who died in August of 2009.

6

that Keith deposited $70,428.40 (which amount excludes Keith's social security income and also excludes a loan Keith received from Kreitzberg) into the account between March 2, 2011, and June 20, 2012, all while Keith supposedly had no source of income, other than his social security income. Womack characterized the account as a money laundering scheme.

Womack testified that of the $70,428.40 deposited into the account, $4,600.00 came from IQ Smart or IQ Smart Technologies. IQ Smart Technologies was an entity owned in whole or in part by Keith and was shut down shortly after Keith filed bankruptcy. IQ Smart's sole employee was terminated at that same time. Thus, IQ Smart had no income and conducted no business between March of 2011 and April of 2012. Another $7,000.00 deposited into the account came from Keith and $700.00 came from Heather, which Heather testified was probably rent she paid to Keith. Heather also testified that she had $30,000 in a Charles Schwab account. Keith told Heather the money belonged to him, so Heather withdrew the money from her Charles Schwab account and gave it to Keith, who deposited the money in the bank account on January 11, 2012. Keith deposited $3,040.00 cash into the account on May 19, 2011, and deposited another $3,000.00 cash into the account on June 7, 2011. Keith also deposited a check in the amount of $15,000.00, payable to Playa Tech, and a check in the amount of $6,000.00, payable to Heather, into the account on May 19, 2011.

Heather testified that some of the checks that were written from the account contained her signature because Keith would give her a stack of blank checks to sign and then he would fill the checks out as he needed. In other instances, Keith would simply forge Heather's signature. A summary of the checks written from the account show that $21,281.76 was paid to Wells Fargo on May 18, 2011, and another $4,700.00 was paid to Wells Fargo on May 23, 2011. Wells Fargo

7

is apparently the lender that has a lien on Keith's residence.  The payments to Wells Fargo were covered in large part by the checks payable to Playa Tech and Heather that Keith deposited into the bank account on May 19, 2011.  Keith also made a payment of $11,747.94 to Toyota on January 25, 2012, and made a payment to his criminal defense attorney, Penelope Strong, of $2,500.00 on July 11, 2011.  Keith also paid other bills, such as his utility bills, from the account, and made purchases at Jason's, a men's clothing store.  Keith told Heather he could maintain the account and write checks from the account because Keith had a document titled "Statutory Power of Attorney" signed by Heather on December 13, 2011.  On June 20, 2012, Keith used the Power of Attorney to close the bank account and make a closing withdrawal of $5,163.97.

As for the safe deposit box, Heather testified that her mother had transferred the safe deposit box into Heather's name sometime prior to the mother's death in August of 2009.  The safe deposit box appears to have been rented on January 5, 2009, and at the time Keith commenced this case, was in the name of Heather Keith and Diaz.[7]  The Safe Deposit Box Admission Record shows that Heather accessed the safe deposit box numerous times between September 11, 2009, and December 19, 2011.  Diaz accessed the safe deposit box once on October 21, 2010.  Heather testified there were several bags of money in the safe deposit box in September of 2009.  Heather did not disturb the money, but used the safe deposit box for the safekeeping of her tips.

Keith used the Power of Attorney to remove Heather's name from the safe deposit box on June 20, 2012, and substituted his name in her place.  Keith accessed the safe deposit box twice

---

[7]  Womack testified that as soon as the bankruptcy cases were filed, Jack took off to Texas and has been hard to locate ever since.

8

on June 20, 2012.  Neither the safe deposit box nor its contents were disclosed in any of Keith's schedules or amended schedules.

Upon learning of the safe deposit box, Womack secured the safe deposit box and had its lock drilled.  On January 16, 2013, Womack filed a Trustee's Report to Court representing that after accessing the safe deposit box, he found: "(1) Cash marked as $36,000, comprised of two $10,000-reams of $100 bills, four $500-reams of $5 bills, and seven $2,000-reams of $20 bills; (2) Three cashier's checks made out to Heather Keith totaling $41,250, comprised of a check from Playa Tech for $5,250, a check from IQSmart Technologies, Inc. for $31,000, and a check from IQSmart Technologies, Inc. for $5,000; and (3) handwritten notes as depicted."  In the Motion for Turnover filed November 6, 2013, the Trustee requests that the Court order Stockman Bank to turn over the Checks located in safe deposit box number 4000212 to him for endorsement by Heather so he can deposit the checks into his trust account and administer the funds as property of the Bankruptcy Estate.  As noted above, the three cashier's checks are payable to Heather Keith.  The checks are dated either July 2, 2010, or July 7, 2010.  Two of the checks are from Yellowstone Bank and the other is from First Interstate Bank.  The First Interstate Bank cashier's check was for Playa Tech and is in the amount of $5,250.00; the two Yellowstone Bank checks were made for IQ Smart Technologies, Inc. in the amounts of $5,000.00 and $31,000.00.

After discovering the safe deposit box and its contents, Womack undertook an investigation to see where the funds might have come from and who the funds might belong to. Womack could not determine where the funds came from, but concluded the funds belonged to

Keith.  Womack explained that Keith previously operated three active casinos[8] and handled large amounts of cash at the time he filed his bankruptcy petition.  After Womack found the funds and filed his report to the Court, Keith claimed the money belonged to Kacy.  Womack disputes such allegation, but argues that if the Court determines the money did come from Kacy, that Kacy turned the money over to Keith for his benefit and that Keith used the money for his own personal benefit without disclosing such funds in his bankruptcy schedules.

Womack disputes that the funds belong to Kacy, explaining that Kacy was involved in an acrimonious divorce that started in 2008.  Pursuant to a Decree of Dissolution entered January 20, 2010, Kacy received, "as her sole and separate property, the 2000 Ford F250 Diesel pickup; the Featherlight horse trailer, her Wells Fargo bank accounts; the value (if any) of her pending claim against SuperValue, the horses in her possession, the personal property in her possession not specifically [awarded to her ex-spouse] . . . and her personal clothing."  In addition, if Kacy delivered the items of personal property that were awarded to her ex-spouse, Kacy was "entitled to retain her 401 (K) at Supervalue, which is valued at approximately FOURTEEN THOUSAND DOLLARS ($14,000.00) and was acquired during the marriage."  In addition to the Decree of Dissolution, Womack also obtained a copy of Kacy's pre-sentence investigation dated June 17, 2010, which was completed following a Pre-Sentence Investigation interview that took place March 24, 2010, wherein Kacy represented that she was, as of March 24, 2010, receiving $894 every other week in unemployment.  Kacy also represented at that time that she owned a vehicle worth $5,000 and a horse trailer worth about the same.  Kacy reported debts at that time of

---

[8]  Womack identified the casinos as Lucky Lady Homestead, Lucky Lady on Grande and Diamond Jubilee.

10

approximately $39,000.

Not included in the pre-sentence investigation report is apparently $62,917.93 Kacy received as an inheritance from the Estate of Preston Strever on March 16, 2010, and a $5,000 inheritance received around that same time from her stepmother.  Keith claims Kacy liquidated all her assets prior to or in early June of 2010, and gave the funds to Diaz for placement in the safe deposit box or to Debtor for payment to Beck.  Keith contends in his opposition filed November 21, 2013, that "Kacy's funds were given to Jack Diaz, to safeguard the funds for Kacy, who was about to be incarcerated on State charges, and would be unable to access her own funds."  Keith further explains in his opposition:

> 5.  After the filing of bankruptcy, Jack Diaz was leaving to retire in the Southwest and was no longer able to care for Kacy's funds.  At the time, it was thought that Heather Keith, the Debtor/Defendant's daughter who was living with him, was a trustworthy person who would safeguard the funds for Kacy and be able to disburse the fund as Kacy directed.  For this reason, the checks that are the subject of this order were obtained by Diaz and written to Heather. . .

* * *

> 6.  This situation remained unchanged during the course of Debtor/Defendant's bankruptcy.  On December 18, 2011, Heather and her father had a falling out over her life style and she was asked to leave his home which she did taking money and property from the Debtor/Defendant.  *The next day, December 19th, 2011.  Heather opened the safety deposit box and took funds belonging to Kacy.*

> 7.  In order to prevent this from happening again, *the Debtor/Defendant changed the safety deposit box using powers of attorney given him by Heather and Kacy.*

*See* Objection to Motion for the Release of Funds and Motion for the Return of Property to the Rightful Owner, docket entry no. 775, p 2 of 4 through 3 of 4.  (Emphasis in original).

Womack believes Keith defrauded the bankruptcy estate by concealing assets in the

amount of $70,428.00.  Womack commenced Adversary Proceeding No. 12-00054 on October 23, 2012, seeking to revoke Keith's discharge under 11 U.S.C. §§ 727(d)(1) and/or (2), and to surcharge Keith's exemptions and/or exempt property in an amount no less than $79,000.00. Womack's complaint and a summons were served upon Keith by first class, postage fully pre-paid on October 30, 2012.  After Keith failed to answer or otherwise respond, Womack sought entry of Keith's default, which default was entered on December 11, 2012.  Nothing further transpired until nine months later, when on September 11, 2013, Womack filed the pending Motion for Entry of Default Judgment.  Because of the surcharge remedy requested in Count II of Womack's complaint, the Court set the matter for hearing.  The hearing originally scheduled by the Court for September 12, 2013, was continued twice, once at Womack's request and once at Keith's request.  Keith, other than his request for continuance filed November 5, 2013, at docket entry no. 14, has not responded to Womack's request for default judgment.

On December 27, 2013, Keith filed in the Adversary Proceeding a Motion to Introduce Evidence, which on December 30, 2013, the Court scheduled for hearing on January 24, 2014. In the Motion, Keith asserts "[i]t would be unfair practice if the judges require pro se litigants to be prepared for and attend all status, prove up, and motion dates as well as to meet filing deadlines[,] and then requests that the Court "allow Keith to submit what he believes to be the truth about [Womack's] Complaint and allow some degree of fairness and allowance so the Defendant can make his case without the knowledge of a Bankruptcy attorney to prove."

## DISCUSSION

### 1.      Motion for Turnover of Property

In his Motion for Turnover, Womack seeks turnover of the three cashier's checks that are

12

in safe deposit box no. 4000212 located at Stockman Bank. All three checks are made payable to Heather. All three checks predate Keith's bankruptcy case and were made when the safe deposit box at issue was maintained in Heather's name. Heather does not claim any interest in the cashier's checks and has agreed to endorse the checks as payable to Womack, as Trustee of Keith's Bankruptcy Estate.

Keith opposes Womack's Motion arguing the funds in the safe deposit box belong to Kacy. The Court finds, based upon the evidence, that the cashier's checks do not and could not belong to Kacy. First, Keith has previously argued that Kacy loaned her money to Playa Tech and that a promissory note for such amount was secured by equipment. Keith then argued that he used $55,000.00 of Kacy's funds to pay attorney Beck. Based upon the foregoing, Kacy should have a secured claim against Playa Tech and arguably, only $24,997 of Kacy's funds could still exist because $55,000 was used to pay Beck's retainer.

Contrary to Keith's argument that Kacy loaned her money to Playa Tech, Kacy filed Proof of Claim No. 21 on December 28, 2010, asserting a secured claim against Keith in the amount of $79,997.00. At that time, Kacy was contending that the $79,997 was loaned to Keith on May 28, 2010, and was secured by a Mortgage dated December 14, 2010. Kacy eventually stipulated with Womack that her claim for the $79,997 is an unsecured claim against Keith. Keith has previously represented that he used $55,000 of Kacy's funds to pay Beck. According to the second theory posited by Keith, he, and not Playa Tech, could still have, at most, $24,997.00 of Kacy's money.

Notwithstanding his prior representation that he used $55,000 of Kacy's money to pay Beck, Keith now contends that the entire $77,250 found in the safe deposit box belongs to Kacy.

13

In support of such contention, Keith makes some interesting arguments. Keith first represents that after Keith's bankruptcy filing, Diaz obtained the cashier's checks and made them payable to Heather. This representation is false because the checks were drafted on July 2, 2010, and July 7, 2010, prior to Keith's July 16, 2010, bankruptcy petition date.

Keith also argues that he and Heather had a falling out on December 18, 2011, and that the next day, December 19, 2011, Heather opened the safety deposit box and took the funds belonging to Kacy. This fact is not supported by the record. Page 1 of Exhibit 3 indicates that the safe deposit box was rented on January 5, 2009, and that Heather first accessed the safe deposit box on September 11, 2009, which was shortly after her mother's death in August of 2009, and well before her fallout with Keith on December 18, 2011. While Heather did access the safe deposit box for the last time on December 19, 2011, if she did in fact take Kacy's money on that date, she did not access the box thereafter to return the money.

Keith has asserted many theories as to where Kacy's money went, none of which are supported by credible evidence. What the evidence does show is that there were three cashier's checks located in a safe deposit box that Womack learned of from Heather. The checks are made payable to Heather, but Heather claims no interest in the checks. The checks were made on behalf of entities which Keith either owned or controlled. The checks are dated prior to Keith's bankruptcy petition date, but were not disclosed in Keith's schedules. Womack has established good cause for the turnover of the cashier's checks. Therefore, Womack's Motion for Turnover is thus granted.

## 2.    Motion for Entry of Default Judgment

As previously noted, Womack commenced Adversary Proceeding No. 12-00054 on

14

October 23, 2012.  After Keith failed to answer or otherwise respond, Keith's default was entered on December 11, 2012.  On September 11, 2013, Womack filed the pending Motion for Entry of Default Judgment, which the Court set for hearing.  After two continuances, the hearing was eventually held on December 10, 2013.

While courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints, *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003), in the Ninth Circuit, pro se litigants are not excused from compliance with the rules.  *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. BAP 2002).  Ignorance of court rules does not constitute excusable neglect, even if a litigant appears *pro se*.  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (*quoting Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir. 1987)); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)("Pro se litigants must follow the same rules of procedure that govern other litigants.")

Keith's pleadings, including his Motion to Introduce Evidence filed December 27, 2013, are difficult to understand.  However, in the Motion to Introduce Evidence, it appears Keith is claiming that he has evidence, which "will speak for itself," that defeats Womack's request to revoke Keith's discharge.  Keith proceeds to request a copy of a hard drive that is in the possession of the Federal Bureau of Investigation and then, in the very next sentence, states "our accountant completely audited the hard drive for the accounting transactions and did discover that about $80,000 was taken by Willis and Walls and deposited into their personal account."  Keith then argues that he could not have taken money from his casinos because he loaned large sums of money to his casinos due to a recession, litigation and a smoking ban.  Keith also seeks to discredit Heather's testimony, arguing she is "vengeful and upset at her father[.]"

The Court need not test Heather's testimony, as Keith suggests. The Court agrees with Keith that Heather is not a credible witness. But Keith is similarly not a credible witness. Additionally, Keith's contention that Willis and Walls stole $80,000 from Keith's casinos is a red herring and has no bearing on the relief sought by Womack.

Since the conversion of this case to Chapter 7 of the Bankruptcy Code, Womack has discovered numerous assets that were not disclosed in Keith's schedules. Womack has also learned of a safe deposit box that, as of July 16, 2010, was in Heather's name, but which is now in Keith's name. That safe deposit box contains checks totaling $41,250 that were dated prior to July 16, 2010, and also contains $36,000 cash. Heather contends the cash was in the safe deposit box in September of 2009, well before Keith's July 16, 2010, petition date.

Womack has also discovered the existence of a bank account that was used by Keith between March of 2011 and June of 2012. Keith -- despite having no source of income between March of 2011 and June of 2012, other than social security income -- deposited $70,428.40 into said account. Heather testified that $700.00 of that amount was most likely paid by Heather to Keith as rent. However, the remainder of the money that was deposited into the account appears to have come from pre-bankruptcy funds over which Keith had control.

For example, Heather testified, and Keith did not dispute, that Heather had $30,000 in a Charles Schwab account. Keith claimed ownership in said funds and when asked by Keith to return the funds, Heather did so and Keith deposited those monies in the bank account on January 11, 2012. Keith also deposited funds totaling $4,600 from IQ Smart, even though IQ Smart was not conducting any type of business in 2011 or 2012. The same holds true for another $15,000 check from Playa Tech that Keith deposited into the account on May 10, 2011.

16

Giving Keith the benefit of appearing pro se, the Court finds that Keith knowingly and fraudulently failed to disclose and actively concealed monies held in a safe deposit box located at Stockman Bank, 2700 King Avenue West, Billings, MT, known as safe deposit box no. XXXX0212.  Keith's failure to disclose the contents of the safe deposit box justifies the revocation of Keith's discharge.

Keith's misconduct also justifies a surcharge against Keith's exempt assets in the amount of $69,728.40.  The Ninth Circuit Court of Appeals has held that a bankruptcy court may equitably surcharge a debtor's statutory exemptions, in addition to revoking the debtor's discharge, when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the Code's exemption scheme.  *Latman v. Burdette*, 366 F.3d 774, 786 (9th Cir. 2004).

At the hearing, Keith wholly failed to explain where he got funds totaling $69,728.40 ($70,428.40 per Womack's demonstrative exhibit, less $700.00 paid to Keith by Heather as rent in 2011) that he deposited into a bank account that Keith maintained in Heather's name.  Based upon a totality of the evidence, the Court can only conclude that the funds existed on Keith's petition date, but were not disclosed.  Such nondisclosure of presumably non-exempt assets was a fraud on Keith's creditors and warrants a surcharge against Keith's claimed exemptions.

As noted earlier, a hearing on the above matters was held December 10, 2013, in Billings. Not until over two weeks later did Keith file his Motion to Introduce Evidence.  The evidence Keith seeks to introduce is irrelevant to the decision at hand.  Moreover, the Court would note that Womack commenced Adversary Proceeding No. 12-00054 on October 23, 2012, and to this date, Keith has not answered or otherwise responded to Womack's complaint.  Keith also has not

17

asked that the Court set aside the default that was entered December 11, 2012.  The Court sees no reason, at this juncture, to further entertain Keith's Motion to Introduce Evidence.

For the reasons discussed above, the Court will enter a separate order in related Adversary Proceeding No. 12-00054, denying Keith's Motion to Introduce Evidence and will grant Womack's request for default judgment.  The Court directs the Clerk's Office to also file a copy of this Memorandum of Decision in Adversary Proceeding No. 12-00054.  The Court will also enter a separate order in Keith's main bankruptcy case providing as follows:

IT IS ORDERED that the Chapter 7 Trustee's Motion for Turnover of Property of the Estate filed November 6, 2013, at docket entry no. 767, is **GRANTED**; and Stockman Bank is hereby directed to turnover to the Trustee the Checks described herein within five (5) days of the date of this Order.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana